**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **KEITH SNYDER** on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> **HACKENSACK MERIDIAN HEALTH, INC.**, <br><br> Defendant. | **Civil Action No.:** <br><br><br><br> **CLASS ACTION COMPLAINT** |

Plaintiff Keith Snyder, Sr. ("Plaintiff"), individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Hackensack Meridian Health, Inc. ("Hackensack" or "Defendant") based upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## NATURE OF THE ACTION

1.      It is both unfair and unlawful for entities like Hackensack to impose discriminatory and punitive health insurance surcharges on employees who use tobacco products. This lawsuit challenges Defendant's unlawful practice of charging a "tobacco surcharge" without complying with the regulatory requirements under the Employee Retirement Income Security Act of 1974 ("ERISA") and the implementing regulations. This lawsuit challenges Defendant's unlawful practice of charging a "tobacco surcharge" under the Hackensack Meridian Health and Welfare Plan (the "Plan") in a manner that violates ERISA and the implementing regulations. ERISA permits health-contingent wellness programs if, and **_only if_**, such programs strictly comply with

1

the criteria governing these programs, including: (i) offering a meaningful and accessible reasonable alternative standard to any individual being charged extra based on a health factor; (ii) clearly disclose the availability of that alternative standard in "all plan materials" describing the surcharge; and (iii) provide the "full reward," meaning the entire difference between the tobacco-user and non-tobacco-user contribution levels. *See* 29 U.S.C. § 1182; 42 U.S.C. § 300gg-4(j). Instead, Defendant imposes a discriminatory tobacco surcharge without providing participants with a *reasonable* alternative standard and fails to provide proper notice, violating federal regulations and depriving employees of benefits to which they are entitled under ERISA.

2.      Tobacco surcharges have become more prevalent in recent years but to be lawful plans must make available a *compliant* "wellness programs" that provides employees with an avenue to avoid the surcharge. Making a compliant wellness program available means employers ***must*** adhere to strict rules set forth by ERISA and the implementing regulations established by the Departments of Labor, Health and Human Services, and the Treasury (collectively, the "Departments") over ten years ago in 2014. ERISA imbues the Departments with the authority to promulgate regulations interpreting ERISA § 702, 29 U.S.C. § 1182, the statute's non-discrimination provision. Accordingly, the Departments have developed a regulatory framework that "must be satisfied" to qualify for the statutory exception or safe harbor. Employers can only invoke this safe harbor if they can demonstrate full compliance with all the requirements. Moreover, while courts are no longer required to defer to an agency's interpretation of an ambiguous *statute* under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), courts must still defer to an agency's interpretation of its own *regulations*, if that interpretation is neither plainly erroneous nor inconsistent with the regulatory framework. *Auer v. Robbins*, 519 U.S. 452 (1997); *Kisor v. Wilkie*, 588 U.S. 558 (2019).

3.      ERISA's strict regulatory requirements are meant to ensure that wellness programs actually promote health and preclude discrimination, instead of wellness programs that are "subterfuge[s] for discriminating based on a health factor."[1] The Final Regulations establish that for plans to be compliant, they must provide a clearly defined, reasonable alternative standard that allows participants to obtain the "full reward," including retroactive reimbursement of surcharges paid while completing the alternative standard. *See id.*, 33159–63. First and foremost, a wellness program must be genuinely designed to improve health or prevent disease, rather than functioning as an improper penalty imposed on certain participants under the guise of a health initiative. Defendant's Plan fails to clearly establish a reasonable alternative standard that informs employees of all the avenues to avoid the surcharge, imposes a roughly $15 biweekly surcharge on all nicotine users, does not notify employees of their rights to a physician-directed alternative to avoid the surcharge in "all plan materials," does not ensure that employees who complete the alternative receive the "full reward," and unlawfully shifts costs onto employees in violation of ERISA's wellness program regulations.

4.      The need for regulatory safeguards surrounding these types of wellness programs is underscored by studies showing little evidence that wellness programs effectively reduce healthcare costs through health improvement. Instead, the savings employers claim often result in cost-shifting onto employees with higher health risks, disproportionately burdening low-income and vulnerable workers who end up subsidizing their healthier colleagues.[2] The regulatory

---

[1] *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (hereinafter the "**Final Regulations**").

[2] Horwitz, J. R., Kelly, B. D., & DiNardo, J. E. (2013). *Wellness incentives in the workplace: Cost savings through cost shifting to unhealthy workers*. Health Affairs, 32(3), 468–476, 474 ("wellness programs may undermine laws meant to prevent discrimination on the basis of health status. Since

safeguards seek to prevent wellness programs from being misused as thinly veiled revenue-generating schemes at the expense of employees who are least able to afford the additional costs by shifting the burden to plan sponsors to demonstrate compliance once a participant alleges discriminatory surcharges. The goal is to ensure that wellness programs operate equitably and in a non-discriminatory manner, and to promote genuine health improvements

5.      Outcome-based programs,[3] such as being tobacco-free or completing a smoking cessation program, must offer a clearly defined "*reasonable* alternative standard," which is an alternative way for "all similarly situated individuals" to obtain the reward (or avoid a penalty) if they are unable to meet the initial wellness program standard (i.e., being tobacco-free). Critically, ERISA's implementing regulations require that "the *same*, *full reward*" must be provided to individuals who complete the alternative standard, regardless of when they do so during the plan year.[4] The Department of Labor ("DOL") has made clear that participants should not be forced to rush through the program under the threat of continued surcharges and that every individual

---

racial minorities and people with low socioeconomic status are more likely than others to have more health risks, they are also more likely to be adversely affected by cost shifting"); *see also* Dorilas, E., Hill, S. C., & Pesko, M. F. (2022). *Tobacco surcharges associated with reduced ACA marketplace enrollment*. Health Affairs, 41(3), Abstract (finding that tobacco surcharges are significant barriers to affordable health insurance).

[3] "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v).

[4] *See* Final Regulations, 33163 ("while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, **the same, full reward must be provided to that individual** as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.)" (emphasis added)).

participating in the program must receive the same reward as provided to non-smokers. *Id.* The Departments made this requirement clear when they stated it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, *every individual participating in the program* should be able to receive *the full amount of any reward or incentive* . . . ." *Id.*, 33160 (emphasis added). Defendant violates these requirements by failing to provide a reasonable alternative standard that provides full reimbursement to employees who complete it, operating a non-compliant penalty structure rather than a lawful wellness incentive, and failing to clearly notify participants of all the avenues available to them to avoid the surcharge, including Benefit Guides, plan documents, and summary plan descriptions ("SPDs"). *Id.* These failures constitute direct violations of ERISA's wellness program regulations.

6.      Defendant cannot qualify for the statutory safe harbor because, while it imposes a health-based surcharge, it does not make available to participants (or notify them of) a compliant wellness program. The Plan fails to satisfy the essential regulatory criteria, which "*must* be satisfied," (*Id.*, 33160; emphasis added) for a wellness program to be lawful under ERISA. Final Regulations, 33160. The core deficiency of Defendant's wellness program is that it does not offer a reasonable alternative standard that makes available the "full reward" to all participants who complete it, as explicitly required by 42 U.S.C. § 300gg-4(j)(3)(D) and 45 C.F.R. § 146.121(f)(4)(iv). While the Plan offers a smoking cessation program, there is no mention of reimbursement or even avoiding the surcharge on a *prospective* basis. To that extent, Defendant fails to make available a clearly defined, reasonable alternative standard that ensures employees who satisfy that standard receive a full refund of the $30 monthly surcharges that are deducted from their paychecks. Instead, Defendant uses these unlawfully obtained funds to offset its own contributions to the Plan, which allows additional money to remain in Defendant's accounts on

5

which the company earns interest. By increasing participant contributions through this surcharge, Defendant reduces its own contributions to the Plan that would otherwise be required to fund the same coverage, depriving the Plan of employer funds it should have received.

7.      Hackensack's wellness program is also unreasonable and unlawful because it conditions an employee's premiums not only on the employee's own tobacco use, but also on the spouse's willingness to participate in and complete the cessation program. Under the Plan, an employee who has a spouse that smokes cannot avoid or remove the surcharge unless the spouse completes Defendant's program. This structure violates ERISA's anti-discrimination rules because it conditions a participant's premiums on a dependent's health factor. *See* 29 C.F.R. § 2590.702(f)(4)(iii). ERISA does not permit employers to deny a participant the full reward, or continue charging a surcharge, based on the conduct or health status of a spouse. *See* 29 U.S.C. § 1182(b)(1) (final clause discussing "dependent of individual"); 29 C.F.R. § 2590.702(c)(1). The alternative standard must be made available to the individual participant, and ERISA does not permit that individual's ability to earn the full reward to depend on the actions, compliance, or health status of any other person. 29 C.F.R. § 2590.702(f)(4)(iii).

8.      Further, Defendant failed to provide proper notice, which is a standalone violation of 42 U.S.C. § 300gg-4(j)(3)(E) ("The plan or issuer involved shall disclose in *all* plan materials describing the terms of the wellness program the availability of a reasonable alternative standard." (emphasis added)). Defendant failed, year after year, to inform participants of their right to have their personal doctor involved in the alternative standard process, as explicitly required by ERISA's antidiscrimination rules. 45 C.F.R. § 146.121(f)(4)(v). Defendant's benefit guides—the documents participants primarily rely on during enrollment—do not disclose that participants who complete the program will receive a retroactive refund of surcharges already paid during the Plan

year, nor do they state that participants' personal physicians' recommendations will be accommodated as part of any alternative standard. *See* Final Regulations, 33166 ("a plan disclosure that references premium differential based on tobacco use . . . must include this disclosure"). Even if Defendant does make the "full reward" available to all tobacco-using participants, it does not tell its participants that. These notice violations alone disqualify Defendant from asserting an affirmative defense in response to Plaintiff's allegations that its tobacco surcharge is discriminatory. Because Defendant cannot qualify for the statutory exception, the tobacco surcharge it imposes on participants is unlawful and discriminatory in violation of ERISA.

9.      Because Hackensack imposes a monthly tobacco surcharge of $30 per *household* but does not make available a *reasonable* alternative standard or provide the required notice in all Plan materials discussing the surcharge, the Plan fails to satisfy the essential regulatory criteria, which "***must*** be satisfied." Final Regulations, 33160. Hackensack does not provide compliant notice in all Plan materials, in violation of ERISA's wellness program rules. As a result, the surcharge functions as a penalty rather than a compliant wellness incentive and Hackensack cannot qualify for the statutory safe harbor. This is not a minor technical failure; it is a fundamental violation of ERISA's core anti-discriminatory purpose: ensuring that participants have a fair and compliant opportunity to be treated the same as non-smokers

10.     This Complaint alleges that Defendant imposes a health-based tobacco surcharge without making available a compliant alternative standard to avoid the surcharge. Defendant bears the burden of proving that their tobacco surcharge is lawful by showing that their wellness program fully complies with ***every*** requirement under ERISA, including making available a *reasonable* alternative standard and informing participants of all the avenues available to them to avoid the surcharge. Not informing participants that there are avenues available to them to avoid the

7

surcharge makes the surcharge facially noncompliant. No amount of *post hoc* justifications can cure this fundamental defect. This type of discrimination is permissible only if employers meet strict criteria, which Defendant does not. Defendant's Plan is not a "program[] of health promotion or disease prevention" as required by ERISA but instead an impermissible cost-shifting scheme that unlawfully penalizes employees for their health status.

11.     Participants like Mr. Snyder are permitted to challenge a surcharge when there is no compliant wellness program made available or when employers provide deficient or misleading information. Once a participant alleges that a surcharge violates ERISA's anti-discrimination provisions and alleges facts to support the deficiency in the wellness program, the burden shifts to the employer to demonstrate that its wellness program fully satisfies all the statutory and regulatory criteria, including the obligation to make available the "full reward" and to notify participants of the same. *See Cunningham v. Cornell Univ.*, 145 S. Ct. 1020, 1029 (2025) (reaffirming "that 'the burden of persuasion as to certain elements of a plaintiff's claim may be shifted to defendants, when such elements can fairly be characterized as affirmative defenses or *exemptions*.'").

12.     Plaintiff is an employee of Defendant who paid the unlawful tobacco surcharge to maintain health insurance coverage under the Plan. This surcharge imposed an additional financial burden on Plaintiff and continues to impose such a burden on those similarly situated.

13.     Plaintiff brings this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover these unlawfully charged fees and for Plan-wide equitable relief to prevent Defendant from continuing to profit from its violations under 29 U.S.C. § 1109. Under 29 U.S.C. § 1109, Defendant is a fiduciary of the Plan who has a legal obligation to act in the best interests of Plan participants and to comply with federal law. Plaintiff, on behalf

of himself and the Plan as a whole, seeks appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and (a)(3) to address Defendant's ongoing violations of ERISA's anti-discrimination provisions.

## PARTIES

14.     Plaintiff Keith Snyder is, and at all times mentioned herein was, an individual citizen of the State of New Jersey residing in the County of Ocean. Plaintiff was an employee of Defendant, who paid a tobacco surcharge of $15 per paycheck (roughly $360 annually) associated with the Plan. Plaintiff was required to pay this tobacco surcharge to maintain health insurance under the Plan.

15.     Plaintiff is a participant in the Plan pursuant to 29 U.S.C. § 1002(7).

16.     Defendant is a is a New Jersey nonprofit corporation with its principal place of business in Edison, New Jersey. Hackensack is an integrated healthcare delivery system that operates hospitals, outpatient facilities, and physician practices throughout New Jersey and surrounding regions. Hackensack is the Plan sponsor and administrator.

17.     At all times relevant to this lawsuit, Defendant sponsored, maintained, and managed the Plan. Defendant employs over 35,000 individuals. As of December 31, 2024, there were over 35,000 participants in the Plan. Defendant's employee benefit plan is subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1002(3).

## JURISDICTION AND VENUE

18.     The Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, as this suit seeks relief under ERISA, a federal statute. Upon information and belief, the number of class members is over 1,000, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

19.     This Court has personal jurisdiction over Defendant because it is headquartered in this District. Defendant has purposefully availed itself of the privilege of conducting business in New Jersey.

20.     Venue is proper in this District under 29 U.S.C. § 1132(e)(2) because Defendant is headquartered in this District and this is a District in which Defendant may be found.

## FACTUAL BACKGROUND

I.    **DEFENDANT'S TOBACCO SURCHARGE VIOLATES ERISA'S ANTI-DISCRIMINATION RULE**

### A. Statutory and Regulatory Requirements

21.     To expand access to affordable health insurance coverage, the Affordable Care Act ("ACA") amended ERISA to prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

22.     The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to *programs of health promotion and disease prevention*" (29 U.S.C. § 1182(b)(2)(B) (emphases added)); however, these "wellness programs"—to qualify for this statutory safe-harbor exception—must strictly adhere to the mandated regulatory requirements.

23.     Under ERISA § 505, 29 U.S.C. § 1135, Congress granted the Department of Labor the authority to issue regulations, including the power to establish regulations prohibiting discrimination against participants and beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182. This authority empowers the Secretary of Labor (the "Secretary") to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of" Title I of ERISA. (29 U.S.C. § 1135). Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly reinforces the Secretary's authority to issue regulations concerning group health plan requirements, which grants the power to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

24.     Exercising this delegated authority, in 2006, the Secretary issued regulations through the notice-and-comment rulemaking process outlining the criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA § 702(b). *See* Final Regulations, 33158–59. Following the amendments by the ACA and Public Health Service Acts, in 2010, the Departments published proposed regulations in November 2012 to "amend the 2006 regulations regarding nondiscriminatory wellness programs." *Id.*, 33159. These regulations (i.e., the Final Regulations) were approved and signed in 2013 to be effective January 1, 2014. *Id.*, 33158.

25.     The Final Regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives (i.e., smoking cessation programs), must meet detailed requirements to qualify for the statutory safe harbor. As the Departments explained, these criteria "***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*, 33163 (emphasis added). "That is," the Departments explained, "these rules set forth criteria for an ***affirmative defense*** that can be used

11

by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). That means once a participant alleges a discriminatory surcharge along with facts showing that the alternative standard offered to them is deficient, the burden then shifts to the employer to prove that the wellness program satisfies *all* the necessary criteria.

26.     The criteria in the Final Regulations are not optional. They serve as the only lawful pathway for plans to impose health-based premium differentials by ensuring that wellness programs do not arbitrarily penalize participants and they prevent employers from using surcharges as a revenue-generating mechanism rather than a genuine tool for health promotion. If a wellness program fails to meet even one of these stringent requirements, the program is noncompliant and the employer cannot benefit from the statutory carve-out. *See* § 2590.702(f)(4) (describing the "[r]equirements for outcome-based wellness programs," stating that a program "does not violate the provisions of this section *only if __all__ of the [] requirements are satisfied*." (emphasis added)).

### B. Regulatory Criteria

27.     To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

(a) Frequency of opportunity to qualify: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

(b) Size of reward: penalties or rewards cannot exceed 50% of the cost of employee-only coverage. § 2590.702(f)(4)(ii)

12

(c) Reasonable design: programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard based on a measurement, test, or screening. . . ." § 2590.702(f)(4)(iii)).

(d) Uniform availability and reasonable alternative standards: "The full reward under the outcome-based wellness program must be available to all similarly situated individuals." § 2590.702(f)(4)(iv).

(e) Notice of availability of reasonable alternative standard: notice must include (a) instructions on how to access the reasonable alternative standard; (b) contact information for inquiries about the alternative standard; and (c) an explicit statement that participants' personal physician's recommendations will be accommodated. *See* § 2590.702(f)(4)(v).

28.     The Departments provided valuable insight into each of the criteria, reflecting their intent to operationalize the statute's protections in a manner that both promotes health and prevents discriminatory practices under ERISA.

29.     Regarding the first criteria, "the once-per-year requirement was included as a bright-line standard for determining the minimum frequency that is consistent with a reasonable design for promoting good health or preventing disease." Final Regulations, 33162. The once-per-

year requirement ensures that participants have a meaningful opportunity to participate in a reasonable alternative standard.

30. A key requirement of the fourth criterion for outcome-based programs is that the "full reward" must be available to "all similarly situated individuals[,]" regardless of when they meet the reasonable alternative standard during the plan year. *See* Final Regulations, 33165. Critically, the Departments clearly state that it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, *every individual* participating in the program should be able to receive the *full amount of any reward or incentive*. . . ." *Id.* (emphases added). While plans have flexibility in determining the manner in which they provide the "full reward," providing the "full reward" to every participant is *mandatory*, regardless of when the participant satisfies the alternative standard. The Departments have made this clear:

> While an individual may take some time to request, establish, and satisfy a reasonable alternative standard, *the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year*. (For example, if a calendar year plan offers a . . . premium discount and an individual . . . satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.) Plans and issuers have flexibility to determine *how* to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) *as long as . . . the individual receives the full amount of the reward*.

Final Regulations, 33163 (emphases added).

31. The Final Regulations provide an example of a non-compliant plan that imposes a tobacco use surcharge but does not facilitate the participant's enrollment in or participation in a smoking cessation program. *See id.*, Example 8. Instead, the employer advises the participant to find a program, pay for it, and provide a certificate of completion. *Id*. The Final Regulations conclude that the plan is not compliant because it "has not offered a reasonable alternative

standard . . . and the program fails to satisfy the requirements of paragraph (f) of this section." *Id*.; Final Regulations, 33180.

32.     For health contingent wellness programs, the Final Regulations require the notice be disclosed "in *all* plan materials describing the terms of" the program. 42 U.S.C. § 300gg-4(j)(3)(E); 45 C.F.R. § 146.121(f)(4)(v) (emphasis added). Further, the Final Regulations establish that "[f]or ERISA plans, wellness program terms (including the availability of any reasonable alternative standard) are generally required to be disclosed in the summary plan description (SPD), as well as in the applicable governing plan documents . . . if compliance with the wellness program affects premiums . . . under the terms of the plan." Final Regulations, 33166. Plans that charge their participants more and fail to inform participants of a reasonable alternative standard to the surcharge violate these requirements.

## II.     DEFENDANT CANNOT AVAIL ITSELF OF ERISA'S SAFE HARBOR

33.     Defendant's tobacco surcharge is discriminatory because Defendant fails to make available a compliant wellness program that would allow participants to avoid the entire surcharge. Defendant imposes a $30 per month "tobacco surcharge" on household in which there is a participant who use tobacco and is enrolled in the Plan. The surcharge is deducted as part of employees' regular before-tax plan contributions. For example, a biweekly pay statement reflects a recurring "Medical Tobacco" deduction of $15, consistent with a $30 monthly assessment. Defendant conditions removal of the surcharge on completion of a smoking cessation program. Upon completion, Defendant removes the surcharge prospectively.

34.     Defendant's benefit guide does not include, in the section describing the tobacco surcharge and cessation program, the required disclosures, including confirmation that participation will waive the surcharge and yield the full reward for the plan year or that the

recommendations of the participant's physician will be accommodated. A participant reading Defendant's materials would not reasonably understand that the surcharge would be refunded for the entire plan year or that he or she could work with a physician to develop an individualized plan to avoid the surcharge. The following is from a 2025 open enrollment benefits overview guide:

**Tobacco Surcharge**
- In addition to regular medical plan premiums, all tobacco users enrolled in the Hackensack Meridian *Health's* medical program are required to pay an additional surcharge per pay period, per household.
  - Surcharge applies to team member and spouse - **$15 per pay**  (per household)
- Tobacco users can reverse their Tobacco Surcharges by completing a designated HMH approved smoking cessation program designed to educate and provide support to individuals trying to change tobacco-related habits.
- For additional information regarding the smoking cessation program, please **click here.**

35.    Even if Defendant makes available the "full reward" to those who complete the program, it does not make that clear to participants in key participant-facing communications. Defendant's benefit guides do not inform participants that those who complete the program will receive a retroactive refund of surcharges already paid during the plan year, nor do they state that participants' personal physicians' recommendations will be accommodated as part of any alternative standard. Further, Defendant fails to include this critical information in the Plan's Summary Plan Description ("SPD") despite the fact that the surcharge impacts premium rates and is, therefore, a core term. Defendant should have included proper notice in the SPD.

36.    As shown, the Benefit Guides also omit the required statement that participants' personal physicians' recommendations will be accommodated. The absence of this language, alone, renders the program noncompliant. By failing to provide such basic instructions where the surcharge is described, Defendant's wellness program is opaque, inaccessible, and practically unusable as a reasonable alternative standard.

37.    Defendant's failure to integrate clear notice of a reasonable alternative standard into its benefit guides violates ERISA and the Final Regulations, which expressly require disclosure "in *all* plan materials describing the terms of the program." Defendant further fails to disclose

16

whether the surcharge will be waived retroactively for participants who complete the cessation program mid-year. This omission also contravenes the mandate that participants who satisfy a reasonable alternative standard at any point during the plan year are entitled to the same full reward as those who met the initial standard from the outset. Federal regulations require that outcome-based wellness programs tied to tobacco use be reasonably designed to improve health, uniformly available to all similarly situated individuals, and supported by a reasonable alternative standard that affords the same full reward regardless of when the participant satisfies the alternative during the plan year. They also require clear notice. Defendant's program, as communicated in its open enrollment materials, fails these mandates. It offers only prospective removal of the surcharge upon completion of a cessation program and is silent about retroactive make-whole relief for surcharges already paid and accommodation of a participant's physician's recommendations.

38.    Defendant should have included clear and explicit disclosure of the right to have an individuals' physician involved and that participants would be fully reimbursed for any surcharges they paid prior to completing the program. Had Defendant included that information, participants like Plaintiff could have taken steps to avoid the surcharge. Plaintiff was never told about any reimbursement from anyone at the company and was unaware that completing the program would result in obtaining the full year's worth of rewards. Defendant failed to include any information about reimbursement in the key documents participants rely on when enrolling for benefits and failed to raise the issue at all in the SPD. Both documents should have contained notice stating that as an alternative to paying the tobacco surcharge, Defendant was offering a no-cost program that would reimburse participants for the entire year. Defendant should have included a statement that the Plan would accommodate the recommendations of the participant's personal physician in designing an alternative standard and that participants could be reimbursed for the

entire year's worth of surcharges. In other words, Defendant should have told participants of *all* the avenues they could take to avoid the surcharge, but it opted not to.

39.    Defendant failed to ensure that its cessation program was reasonably designed to promote health. Participants were forced to pay out of pocket for a program with no guarantee of a full reward, all while Defendant continued collecting millions of dollars in discriminatory surcharges. The lack of required disclosures and clarity, coupled with a punitive surcharge and only prospective relief upon completion, reflects a program designed more for revenue generation and cost shifting than for bona fide health promotion. By omitting material information and required disclosures, Defendant deprived participants of the ability to make informed choices about their health coverage and financial obligations, violating the regulatory framework governing wellness programs and ERISA's fiduciary duties of loyalty and prudence.

40.    Allowing entities like Hackensack to exploit its participants and unlawfully extract millions of dollars annually from them without making available a compliant wellness program transforms the surcharge into a "subterfuge for discrimination" and undermines ERISA's purpose of protecting workers from health-based discrimination. If unchecked, this practice would permit employers to manipulate wellness programs as revenue-generating schemes rather than genuine health initiatives, shifting unjust financial burdens onto employees in violation of federal law. This type of conduct violates not only ERISA's antidiscrimination rules governing wellness programs but also the statute's fiduciary duties of loyalty and prudence, as Defendant failed to administer the Plan solely in the interest of participants.

## III.    DEFENDANT'S SELF-DEALING AND MISMANAGEMENT OF PLAN FUNDS

41.    Defendant administered the tobacco surcharge by designating which participants are charged and withholding the surcharge directly from participants' paychecks as a before-tax

plan contribution, alongside required premium deductions. These deductions are part of the funding stream for Plan coverage, not separate penalties, and are treated the same way as other contributions made to support the Plan's medical benefits.

42.    The governing Plan documents make clear that medical coverage is funded by both employer and participant contributions. Defendant commits a defined company contribution amount toward the cost of coverage, with participants paying the balance. By layering a tobacco surcharge on top of those required participant contributions, Defendant created what should have been a third stream of funding available to the Plan: (1) participants' required premium contributions, (2) Defendant's promised company contribution amount, and (3) the additional tobacco surcharge. But instead of allowing all three funding streams to flow into the Plan, Defendant used the tobacco surcharge to offset its own funding obligation. Because the cost of coverage for each tier is fixed, every dollar of surcharge collected reduced the company's contribution dollar-for-dollar. Thus, rather than increasing resources available to the Plan, the surcharge simply shifted costs away from Defendant and onto participants. For example, Plaintiff's paystub shows a recurring $15 "Medical Tobacco" surcharge withheld as a before-tax deduction. These surcharges were taken in the same manner as other contributions and are indistinguishable in treatment from the employee's share of plan funding.

43.    This practice constitutes classic self-dealing because Defendant used the mechanisms of the Plan to realize savings for itself, depriving the Plan of the full benefit of the three distinct funding streams it should have received. Defendant's actions caused the Plan to lose the very employer contributions it was otherwise supposed to receive, in violation of ERISA's fiduciary duty standards.

19

44. In doing so, Defendant failed to act solely in the interest of participants and beneficiaries, as ERISA requires. Rather than use the surcharge proceeds to, for example, offset the premiums of non-smokers, Defendant used the funds to save money for itself. Upon information and belief, the money that Defendant did not have to contribute to the Plan sat in its accounts and earned interest, while the Plan was deprived of the full amount of funding it should have received, stripping the Plan of employer dollars it was owed and converting those savings into financial benefit for Defendant. This diversion of funds is self-dealing, violates the duty of loyalty, and constitutes a prohibited transaction under ERISA §§ 404 and 406.

## CLASS DEFINITION AND ALLEGATIONS

45. Plaintiff brings this action individually and on behalf of all other similarly situated individuals, pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure.

46. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **Tobacco Surcharge Class**
> All individuals residing in the U.S. who, from 2014 to the time of judgment, paid a tobacco surcharge in connection with their participation in a health or welfare plan offered by Defendants.

47. Excluded from the Class are Defendant's officers and directors.

48. Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

49. The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a) and (b)(1).

50. **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiff is informed,

believes, and thereon alleges, that the proposed Class contains thousands of participants who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

51. **Commonality**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

a. Whether Defendant's tobacco surcharge discriminates against participants based on a health status related factor;

b. Whether the smoking cessation program constitutes a reasonable alternative standard by which a participant could receive the "full reward" of the tobacco surcharge;

c. Whether Defendant provided the notice in ***all*** the plan materials describing the surcharge;

d. Whether Defendant provided the required statement that participants' personal physicians' recommendations would be accommodated;

e. Whether Defendant's wellness program violates ERISA and the Final Regulations;

f. Whether Defendant breached its fiduciary duties by collecting and retaining the tobacco surcharge;

g. Whether Defendant breached its fiduciary duties by failing to periodically review the terms of its wellness program and the communications sent to participants to ensure compliance with ERISA and applicable regulations;

h. The appropriate mechanisms to determine damages on a class-wide basis

52. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were charged improper and unlawful tobacco surcharge. Moreover, Plaintiff's claims are typical of the Class members' claims because Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

53.    **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff and members of the Class each participated in health and welfare plans offered by Defendant and were harmed by Defendant's misconduct in that they were assessed unfair and discriminatory tobacco surcharges. Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

54.    Plaintiff seeks injunctive, declaratory, and equitable relief on grounds generally applicable to the Class. Unless the Class is certified, Defendant will be allowed to profit from its unfair and discriminatory practices, while Plaintiff and the members of the Class will have suffered damages. Unless Class-wide injunctions are issued, Defendant may continue to benefit from the violations alleged, and the members of the Class will continue to be unfairly treated.

## CAUSES OF ACTION

### COUNT I
### UNLAWFUL SURCHARGE – FAILURE TO PROVIDE A REASONABLE ALTERNATIVE STANDARD
**(Violation of ERISA § 702, 29 U.S.C. § 1182(b) and PHSA 2705, 42 U.S.C. § 300gg-4(j)(3)(D); 29 C.F.R. § 2590.702(f)(4)(iv); 45 C.F.R. § 146.121(f)(4)(iv))**

55.    Plaintiff re-alleges and incorporates herein by reference allegations 1–54 of this Complaint.

56.    Defendant unlawfully imposes a tobacco surcharge on all participants who use tobacco in violation of ERISA § 702. By imposing discriminatory surcharges of $15 biweekly on households with participants who use tobacco, without complying with the regulatory requirements, Defendant is violating ERISA § 702(b), 29 U.S.C. § 1182(b)(1). This discrimination stems from Defendant's decision not to provide a *reasonable* alternative standard that ensures

participants who satisfy that standard are provided with the full reward, in violation of ERISA and the Final Regulations.

57.     ERISA explicitly prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual *or to an individual enrolled under the plan as a dependent of the individual*" *See* 29 U.S.C. § 1182(b)(1) (emphasis added). Defendant's Plan violates this prohibition because it fails to provide a *reasonable* alternative standard ensuring that participants who satisfy that standard are eligible for the full reward, as required by 29 C.F.R. § 2590.702(f)(4)(iv).

58.     Participants who completed the designated cessation program were only eligible for prospective relief if every tobacco user in their household completed the program, contrary to ERISA's rule mandating that the "full reward" be made available to "all similarly situated individuals." It is unreasonable to condition a participant's ability to avoid or recover the surcharge on a spouse's or dependent's completion of an alternative standard because ERISA requires that the full reward be available based solely on the participant's own completion of the alternative standard. Because not all "similarly situated individuals" could receive the full reward for the entire plan year upon completion of an alternative standard, Defendant's tobacco surcharge program fails to meet the requirements of 29 U.S.C. § 1182(b)(2)(B) and 29 C.F.R. § 2590.702(f). Further, Because participants could not receive the full reward for the entire plan year upon completion of a reasonable alternative standard, Defendant's tobacco surcharge program fails to meet the requirements of 29 U.S.C. § 1182(b)(2)(B) and 29 C.F.R. § 2590.702(f).

59.     Defendant's failure to make the full reward available constitutes unlawful discrimination based on a health-status-related factor and renders the surcharge an unlawful premium differential under 29 U.S.C. § 1182(b)(1).

60.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. *See* 29 U.S.C. § 1182(b). Because Defendant's surcharge program does not satisfy the criteria that plans *must* comply with to qualify as a compliant "program[] of health promotion and disease prevention," Defendant cannot qualify for the statutory safe-harbor and the tobacco surcharge is, therefore, unlawful and discriminatory. Plaintiff and Class Members are entitled to relief under ERISA § 502(a)(3).

## COUNT II
## UNLAWFUL SURCHARGE – FAILURE TO PROVIDE REQUIRED NOTICE
(Violation of ERISA § 702, 29 U.S.C. § 1182(b) and PHSA 2705, 42 U.S.C. § 300gg-4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4)(v); 45 C.F.R. § 146.121(f)(4)(v))

61.     Plaintiff re-alleges and incorporates herein by reference allegations 1–54 of this Complaint.

62.     Defendant's tobacco surcharge program is not and was not a permissible wellness program because it failed to provide proper notice of the availability of a *reasonable* alternative standard, in violation of 29 C.F.R. § 2590.702(f)(4)(v).

63.     Key Plan materials describing the surcharge did not disclose that participants who completed the cessation program would be eligible for retroactive reimbursement or the full reward for the plan year; instead, they misleadingly stated that the surcharge would be "reversed" only upon completion of the program. If the Plan intended to provide the full reward it should have told

24

participants as much. Defendant's plan materials also failed to include the required statement that recommendations of an individual's personal physician would be accommodated in determining a reasonable alternative standard.

64.    Because core, participant-facing documents describing the program and the premium differential omitted these mandatory disclosures, the tobacco surcharge program fails to satisfy the notice requirements necessary to qualify for ERISA's safe-harbor protection.

65.    Defendant's imposition of the tobacco surcharge therefore constitutes unlawful discrimination based on a health-status-related factor in violation of 29 U.S.C. § 1182(b)(1) and 42 U.S.C. § 300gg-4.

66.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. *See* 29 U.S.C. § 1182(b). Because Defendant's surcharge program does not satisfy the criteria that plans *must* comply with to qualify as a compliant "program[] of health promotion and disease prevention," Defendant cannot qualify for the statutory safe-harbor and the tobacco surcharge is, therefore, unlawful and discriminatory. Plaintiff and Class Members are entitled to relief under ERISA § 502(a)(3).

**COUNT III**
**BREACH OF FIDUCIARY DUTY (PLAN-LEVEL RELIEF)**
**(Violation of ERISA §§ 404, 406 and 409, 29 U.S.C. §§ 1104, 1106 and 1109)**

67.    Plaintiff re-alleges and incorporates herein by reference allegations 1–54 of this Complaint.

68.    At all relevant times, Defendant was the administrator of the Plan and was a fiduciary in that it exercised discretionary authority and control over the management of the Plan's assets.

69.    ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

70.    Instead of loyally and prudently acting in the best interests of Plan participants, Defendant chose to use Plan assets to exclusively benefit itself, to the detriment of the Plan and its participants, by unlawfully withholding millions of dollars in tobacco surcharges from participants' paychecks and using these funds to offset its own obligations to contribute to the Plan. The paystubs confirm that these surcharges were collected as before-tax deductions, alongside other contributions to the Plan, and thus were Plan assets from the moment of collection. Defendant breached its fiduciary duty by assessing and collecting the tobacco surcharge in violation of federal law and in violation of the terms of the Plan and then diverting those funds to reduce its own costs. The Plan should have received three funding streams: (1) employee premium contributions, (2) Defendant's contribution amount, and (3) the surcharge itself. But Defendant used the surcharge amounts to displace its own contributions shifting the costs associated with the Plan from itself to participants like Plaintiff. Upon information and belief, Defendant further

profited by retaining those amounts in its own accounts, earning a float, and failing to remit the full employer contribution owed to the Plan.

71.    Year after year, Defendant administered the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary of the Plan within the meaning of 29 U.S.C. § 1002(21), in that it exercised discretionary authority and discretionary control respecting the management and administration of the Plan and its surcharge programs, including the decision not to offer a compliant wellness program or compliant communications. Defendant exercised discretionary authority by deciding how surcharge proceeds were handled, funneling the surcharge funds indirectly into its own coffers. Defendant also controlled whether participants would receive the "full reward" of avoiding the surcharge for the Plan year and failed to administer notices or alternatives required by ERISA's implementing regulations.

72.    Upon information and belief, Defendant controlled and disseminated to all employees the benefit guides and other Plan communications, including the SPD, discussing the premium differential but failed to notify them of all the way by which they could avoid the entire year of surcharges. Defendant further failed to conduct periodic or prudent reviews of its surcharge and wellness program, and the related communications to participants, to ensure compliance with ERISA and its regulations. Instead, it allowed a structurally defective wellness program to persist year after year, even though it resulted in discriminatory surcharges and deprived the Plan of the employer contributions it should have received.

73.    Defendant breached its fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. It acted disloyally by using ill-gotten funds to shrink its own financial contributions. It also failed to properly notify participants, year

after year, of a compliant wellness program and failed to review the terms of the Plan to ensure compliance. These breaches are incompatible with ERISA's core fiduciary mandates.

74.     As a result of the unlawful surcharges, Defendant enriched itself at the expense of the Plan. By deducting these amounts directly from participants' paychecks without properly administering a compliant wellness program, Defendant secured financial savings for itself while participants and the Plan bore increased costs. The structure of the program ensured that "all similarly situated individuals" could not obtain the "full reward" for the entire plan year, and Defendant's communications failed to disclose participants' rights to a reasonable alternative standard. In this way, Defendant transformed what should have been an employer-funded plan contribution into an unjust enrichment for itself, contrary to 29 U.S.C. § 1104(a)(1)(A).

75.     Further, by withholding unlawful tobacco surcharges from participants' paychecks and using those funds to reduce its own financial obligations to the Plan, Defendant caused the Plan to engage in transactions that constituted a direct or indirect exchange of Plan assets for the benefit of a party in interest—namely, itself—in violation of 29 U.S.C. § 1106(a)(1). Defendant is a party in interest, as defined under 29 U.S.C. § 1002(14), because it is both the Plan sponsor and a fiduciary exercising discretionary authority over the Plan's assets.

76.     By retaining the amounts of the tobacco surcharges, Defendant increased its own corporate assets and saved the money it would otherwise have had to contribute to the Plan. In doing so, it dealt with Plan assets for its own benefit, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), which prohibits fiduciaries from engaging in self-dealing. The surcharges should have supplemented, not displaced, Defendant's contributions. By retaining and misusing the surcharges, Defendant benefitted from the float at the expense of the Plan and its participants, leaving the Plan with less than what it should have received under its governing documents.

77.     Defendant breached its fiduciary duties by: administering a noncompliant Plan; failing to make available the "full reward" to participants; failing to properly disclose material information about the wellness programs to participants—specifically, the right to include their own physician in the development of an alternative standard—thereby depriving them of the ability to make informed choices; acting on behalf of a party whose interests were adverse to the Plan and its participants, in violation of ERISA § 406(b)(2); and failing to prudently review the terms of the Plan, the surcharge program, and the communications sent to participants, for year, to ensure compliance with ERISA's requirements. These breaches caused Plaintiff and the Class to incur unlawful surcharges that shifted costs to participants and away from Defendant. Had Defendant complied with its fiduciary duties, it would have noticed its deficiencies and taken steps to correct the behavior. More importantly, it would have ensured that the surcharge proceeds were deposited into the Plan as additional funding, and safeguarded participants from bearing unlawful costs.

78.     As a direct and proximate result of these fiduciary breaches, members of the Class lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks.

79.     Plaintiff is authorized to bring this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Defendant is liable to: make good to the Plan all losses resulting from its breaches, including but not limited to any and all equitable and remedial relief as is proper, disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan or a constructive trust all profits acquired through its violations, as alleged herein.

## COUNT IV
### BREACH OF FIDUCIARY DUTY (INDIVIDUAL RELIEF)
**(Violation of ERISA §§ 404, 406 and 409, 29 U.S.C. §§ 1104, 1106 and 1109)**

80.     Plaintiff re-alleges and incorporates herein by reference allegations 1–54 of this Complaint.

29

81.    At all relevant times, Defendant was the administrator of the Plan and was a fiduciary in that it exercised discretionary authority and control over the management of the Plan's assets.

82.    ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

83.    Instead of loyally and prudently acting in the best interests of Plan participants, Defendant chose to use Plan assets to exclusively benefit itself, to the detriment of Plaintiff and other similarly situated individuals, by unlawfully withholding millions of dollars in tobacco surcharges from participants' paychecks. Year after year, Defendant administered a noncompliant Plan and wellness program. Defendant administered the Plan by exercising discretionary authority over how surcharge proceeds were handled, whether participants would receive the "full reward," and by communicating with participants about their rights under the Plan.

84.    Upon information and belief, Defendant controlled and disseminated to all employees the benefit guides and other Plan communications discussing the premium differential but failed to notify them of all the way by which they could avoid the entire year of surcharges. Defendant further failed to conduct periodic or prudent reviews of its surcharge and wellness program, and the related communications, to ensure compliance with ERISA and its regulations. Instead, it allowed a structurally defective wellness program to persist year after year, even though

it resulted in discriminatory surcharges and deprived the Plan of the employer contributions it should have received.

85.     Defendant breached its fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. It acted disloyally by using ill-gotten funds to shrink its own financial contributions. It also failed to properly notify participants, year after year, of a compliant wellness program and failed to review the terms of the Plan to ensure compliance. These breaches are incompatible with ERISA's core fiduciary mandates.

86.     As a result of the unlawful surcharges, Defendant enriched itself at the expense of the Plan. By deducting these amounts directly from participants' paychecks without properly administering a compliant wellness program, Defendant secured financial savings for itself while participants bore increased costs. The structure of the program ensured that "all similarly situated individuals" could not obtain the "full reward" for the entire plan year, and Defendant's communications failed to disclose participants' rights to a reasonable alternative standard. In this way, Defendant transformed what should have been an employer-funded plan contribution into an unjust enrichment for itself, contrary to 29 U.S.C. § 1104(a)(1)(A).

87.     Further, by withholding unlawful tobacco surcharges from participants' paychecks and using those funds to reduce its own financial obligations to the Plan, Defendant engaged in transactions that constituted a direct or indirect exchange of Plan assets for the benefit of a party in interest—namely, itself—in violation of 29 U.S.C. § 1106(a)(1). Defendant is a party in interest, as defined under 29 U.S.C. § 1002(14), because it is both the Plan sponsor and a fiduciary exercising discretionary authority over the Plan's assets.

88.     By retaining the amounts of the tobacco surcharges, Defendant increased its own corporate assets.

31

89.     Defendant breached its fiduciary duties by: administering a noncompliant Plan; failing to make available the "full reward" to participants; failing to properly disclose material information about the wellness programs to participants—specifically, the right to include their own physician in the development of an alternative standard—thereby depriving them of the ability to make informed choices; acting on behalf of a party whose interests were adverse to the Plan and its participants, in violation of ERISA § 406(b)(2); and failing to prudently review the terms of the Plan, the surcharge program, and the communications sent to participants, for year, to ensure compliance with ERISA's requirements. These breaches caused Plaintiff and the Class to incur unlawful surcharges that shifted costs to participants and away from Defendant. Had Defendant complied with its fiduciary duties, it would have noticed its deficiencies and taken steps to correct the behavior. More importantly, it would have ensured that the surcharge proceeds were deposited into the Plan as additional funding, and safeguarded participants from bearing unlawful costs.

90.     As a direct and proximate result of these fiduciary breaches, members of the Class lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks.

91.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff and the Class seek individual equitable relief necessary to redress Defendant's fiduciary breaches, including but not limited to restitution, surcharge, disgorgement, a constructive trust over improperly retained funds, and declaratory relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendant on all claims and requests that the Court awards the following relief:

A. An Order certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class representative for the Class, and appointing the undersigned to act as Class Counsel;

B. A declaratory judgment that the unlawful and discriminatory tobacco surcharges imposed on participants violate ERISA's anti-discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C. An Order instructing Defendant to reimburse all persons who paid the unlawful and discriminatory surcharge;

D. A declaratory judgment that Defendant breached its fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, instituting a surcharge on participants without offering a reasonable alternative standard in violation of ERISA's anti-discrimination provisions and for failing to notify participants of an alternative standard, and for failing to adequately monitor the terms of the Plan, the surcharge, and the wellness program, as well as communications with participants, to ensure they complied with ERISA and the applicable regulations;

E. An Order requiring Defendant to provide an accounting of all prior payments of the surcharges under the Plan;

F. Declaratory and injunctive relief as necessary and appropriate, including enjoining Defendant from further violating the duties, responsibilities, and obligations imposed on it by ERISA with respect to the Plan and ordering Defendant to remit all previously collected surcharges;

G. Disgorgement of any benefits or profits Defendant received or enjoyed due to the violations of ERISA § 702, 29 U.S.C. § 1182(b);

33

H.  Restitution of all surcharge amounts Defendant collected;

I.  Surcharge from Defendant totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendant as a result of its collection of the unlawful and discriminatory tobacco surcharges;

J.  Relief to the Plan from Defendant for their violations of ERISA § 404, 29 U.S.C. § 1104, under 29 U.S.C. § 1109, including a declaration that the tobacco surcharges are unlawful; restoration of losses to the Plan and its participants caused by Defendant's fiduciary violations; disgorgement of any benefits and profits Defendant received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to members who paid the surcharges; removal and replacement of the Plan's fiduciaries, and all appropriate injunctive relief, such as an Order requiring Defendant to stop imposing the unlawful and discriminatory surcharges on participants in the future.

K.  An award of pre-judgment interest on any amounts awarded to Plaintiff and the Class pursuant to law;

L.  An award of Plaintiff's attorneys' fees, expenses, and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

M.  Any other relief the Court determines is just and proper.

Dated: January 16, 2026

Respectfully submitted,

**SIRI & GLIMSTAD LLP**

/s/ Jack Spitz

Jack Spitz (Bar No: 248632019)
Oren Faircloth (*pro hac vice* forthcoming)
Willian H. Payne (*pro hac vice* forthcoming)
8 Campus Drive, Suite 105 PMB#161
Parsippany, New Jersey 07054
Tel: (212) 532-1091
E: jspitz@sirillp.com
E: ofaircloth@sirillp.com
E: wpayne@sirillp.com

*Attorneys for Plaintiff and the Proposed Class*

35